# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

DENNIS WOODS, as guardian and next friend of
T.W. and D.W. and on behalf of
all others similarly situated,

       Plaintiffs,

v.                                    Case No. 17-CV-492-WJ-JHR

RIO RANCHO PUBLIC SCHOOLS,
THE RIO RANCHO PUBLIC SCHOOLS BOARD OF EDUCATION,
RICHARD BRUCE, MIKE BAKER, LINDA KITTS,
B.J. HARTFORD, MIKE LAWTON,
CHRIS BECK, and KIM FULTON

       Defendants.

## MEMORANDUM OPINION AND ORDER
## (1) GRANTING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COUNT II OF PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT ON THE BASIS OF QUALFIED IMMUNITY, [DOC. 70],
## (2) GRANTING OFFICIAL-CAPACITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COUNT I AS POLICY No. 339 WAS FACIALLY VALID, [DOC. 72], AND
## (3) DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS BROUGHT PURSUANT TO THE NEW MEXICO TORT CLAIMS ACT

     **THIS MATTER** comes before the Court on three motions:

(1)  Individual Defendants' Motion to Dismiss Count II of Plaintiffs' Second Amended Class Action Complaint on the Basis of Qualified Immunity, which seeks to dismiss all Fourth Amendment claims brought in Count II against Defendants Linda Kitts, B.J. Hartford, Mike Lawton, and Kim Fulton, **[Doc. 70, filed September 20, 2018]**;

(2)  Defendants' Motion to Dismiss Plaintiffs' Claims Brought Pursuant to the New Mexico Tort Claims Act on the Basis of Governmental Immunity, **[Doc. 71, filed September 20, 2018]**; and

(3)  Official-Capacity Defendants' Motion in Support of Motion to Dismiss Plaintiffs' Count I as Policy No. 339 was Facially Valid, **[Doc. 72, filed September 20, 2018]**.

     Having reviewed the parties' briefs and the applicable law, the Court finds that:

(1) Individual Defendants' Motion to Dismiss Count II of Plaintiffs' Second Amended Class Action Complaint on the Basis of Qualified Immunity, **[Doc. 70]**, is well-taken and, therefore, is **GRANTED**;

(2) Official-Capacity Defendants' Motion in Support of Motion to Dismiss Plaintiffs' Count I as Policy No. 339 was Facially Valid, **[Doc. 72]**, is well-taken and, therefore, is **GRANTED**; and

(3) the Court declines to address Defendants' Motion to Dismiss Plaintiffs' Claims Brought Pursuant to the New Mexico Tort Claims Act on the Basis of Governmental Immunity, **[Doc. 71]**, on the grounds that the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. The Court will address these motions in that order.

## BACKGROUND

Plaintiffs filed this lawsuit in the County of Sandoval, State of New Mexico on February 28, 2017, and Defendants removed the case to federal court April 26, 2017. [Doc. 1, filed April 26, 2017].

The salient facts are as follows: Dennis Woods, as the guardian and next friend of minor Plaintiffs T.W. and D.W., and "on behalf of all others similarly situated," seeks to represent a class of "no fewer than 23 middle school students" alleging that they were all subjected to unreasonable searches under the Fourth Amendment. [Doc. 67, filed August 8, 2018].[1] Plaintiffs also "challenge the constitutionality of an official policy of the Rio Rancho Public Schools" alleging that the policy,[2] which allows for searches and seizures in school under certain circumstances, is

---

[1] The Court notes that Plaintiffs have not moved to certify this matter as a class action with this Court and the only individuals that are pertinent to this inquiry are T.W. and D.W. *See* Fed.R.Civ.P. 23(c); *see also East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977); and D.N.M.LR-Civ. 7.1.

[2] The policy states:

A pat-down search of a person may be conducted on the basis of a reasonable, individualized suspicion that such person is in possession of contraband. Any such search shall be conducted in

unconstitutional on its face and as applied, and Plaintiffs seek to bring a cause of action under the New Mexico Tort Claims Act. [Id.].

Plaintiffs allege that on April 16, 2015, approximately twenty-three Rio Rancho Middle School students were subjected to three separate searches: a search (1) in the cafeteria; (2) in the girls' restroom; and (3) in the principal's office. [Id. ¶¶ 39-69].

### 1. Search in the Cafeteria

As claimed in the second amended complaint, Plaintiffs state that the students were in a classroom at Rio Rancho Middle School located in Rio Rancho, New Mexico. [Id. ¶ 39]. At one point a student reported to the teacher that someone allegedly stole $210 from her in the form of ten (10) twenty-dollar bills and one (1) ten-dollar bill. [Id. ¶ 40]. As a response, the teacher requested that a security guard come to the classroom. [Id. ¶ 41]. Defendant Mike Lawton, one of the school's security guards, responded to the request and discussed the situation with the student that reported the money stolen. [Id. ¶ 42]. Defendant Linda Kitts, the school's principal, and Defendant Chris Beck, an officer for the Sandoval County Sheriff's Department and the school resource officer for the school, arrived at the classroom shortly after Defendant Lawton responded. [Id. ¶ 44]. Defendant Kitts instructed the students to place their head on their desks, and stated that the person responsible could confess by raising her hand and return the money without consequence. [Id. ¶ 45]. No student raised their hand. [Id. ¶ 46].

Shortly after, Defendant Kitts instructed the students to walk to the cafeteria to be searched. [Id. ¶ 47]. From that point on, a search occurred on the students. [Id. ¶ 49]. Plaintiffs state that

---

private by an authorized school official of the same sex as the person to be searched and in the presence of a witness of the same sex. Strip searches are not permitted. However, with reasonable, individualized suspicion, coats, purses, backpacks, briefcases or similar personal effects may be searched.

[R. Doc. 67.1, filed August 8, 2018]. The word "contraband" is defined as "any substance, material or object prohibited from school pursuant to school policy or state or federal law, including drugs, alcohol, fireworks, or weapons." [Id.].

either Defendant Lawton, Defendant Kim Fulton, a security guard at the school, or Defendant B.J. Hartford, an assistant principal at the school, conducted the searches on the students. [Id.]. The searches included "forcing" the students "to turn out their pockets, remove their shoes, show the bottoms of their feet, and subject themselves to a pat down search." in an attempt to find the money. [Id. ¶ 51]. Furthermore, Plaintiffs state that each student, including T.W. and D.W., had their backpacks searched and the contents of their backpacks removed. [Id. ¶ 52]. At this point, the money was not found on any of the students or inside of their backpacks. [Id. ¶ 53].

### 2. Search in the Restroom

Plaintiffs allege that shortly after the cafeteria search, Defendant Kitts "decided to conduct additional, more invasive searches on certain members of the [c]lass[.]" [Id. ¶ 55]. Defendant Fulton then confronted female students in the girls' restroom. [Id. ¶ 58]. Fulton then conducted additional searches of female students by ordering the female students to pull their shirts and bras away from their chests and shake their bras. [Id. ¶¶ 59-60]. The complaint states that the named plaintiffs refused to comply with Defendant Fulton's request. [Id. ¶ 61].

### 3. Search in the Principal's Office

After searching the restroom, Defendant Fulton took two of the students, **not** T.W. or D.W., found at the restroom to Defendant Kitts' office. [Id. ¶ 62]. Defendant Kitts instructed Defendant Fulton to search the students' entire persons for the money. [Id. ¶ 64]. This search included Defendant Kitts "asking at least some [students] to pull their bras and shirts away from their chests, in an apparent attempt to see if anything would fall out." [Id. ¶ 66]. The complaint does not identify the students found in the restroom. Plaintiffs again state that this search did not reveal the money. [Id. ¶ 68].

**STANDARD**

Defendants have asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012). Under 42 U.S.C. § 1983, a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States [. . .] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured [. . . .]" "Individual defendants named in a [Section] 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation, ellipsis, and quotations omitted).

"[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show "both that [(1)] a constitutional violation occurred and [(2)] that the constitutional right was clearly established at the time of the alleged violation." *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009) (quotations omitted). A court evaluating qualified immunity is free to "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Courts may grant a motion to dismiss on the basis of qualified immunity, but "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371

F.3d 1199, 1201 (10th Cir. 2004). "[I]t is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original) (internal quotation marks omitted).

Under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). The complaint must plead sufficient facts, taken as true, to provide plausible grounds that discovery will reveal evidence to support the plaintiff's allegations. *Id.* A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

To state a claim under 42 U.S.C. § 1983, Plaintiffs must allege sufficient facts to show the deprivation of a right secured by the Constitution and laws of the United States and must show that the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). There is no *respondeat superior* liability under Section 1983 and a plaintiff must plead sufficient facts to show that each defendant, through his or her own individual actions, has violated the Constitution. *See Barney v. Puls*ipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998). "It is incumbent upon a plaintiff to 'identify *specific* actions by *particular* defendants' in order to make

out a viable § 1983 [. . .] claim." *See Pahls v. Thomas*, 718 F.3d 1210, 1226 (10ᵗʰ Cir.2013) (*quoting*

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir.1998) (emphasis in original)).


## ANALYSIS

### I.     Motion to Dismiss Based on Qualified Immunity

Using its discretion, the Court will analyze the first prong of the qualified immunity test

and determine whether T.W. and D.W. had their Fourth Amendment rights violated. The Fourth

Amendment to the United States Constitution provides that, "[t]he right of the people to be secure

in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated." U.S. Const. amend. IV. Reasonableness is the "touchstone" of the constitutionality

of any governmental search, requiring "a balancing of the need for the particular search against

the invasion of personal rights that the search entails." *Bd. of Educ. of Indep. Sch. Dist. No. 92 of

Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 828 (2007).

In a public-school setting, "what is reasonable depends on the context within which a

search takes place," and "requires some modification of the level of suspicion of illicit activity

needed to justify a search." *A.M. v. Holmes*, 830 F.3d at 1157-58 (*citing New Jersey v. T.L.O.*, 469

U.S. 325, 337 (1985); *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 370 (2009)).

Accordingly, the constitutionality of a student search depends "on the reasonableness, under all

the circumstances, of the search" and involves a two-fold inquiry: (1) whether the school search

was justified at its inception; and (2) whether the search as actually conducted "was reasonably

related in scope to the circumstances which justified the interference in the first place." *T.L.O.*,

469 U.S. at 341 (*quoting Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

"Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341-42. "[R]easonable suspicion is not a requirement of absolute certainty," but only of "sufficient probability," and requires only a "moderate chance of finding evidence of wrongdoing." *Id.* at 346; *Safford*, 557 U.S. at 371. Reasonable suspicion is "the sort of common-sense conclusion about human behavior upon which practical people—including government officials—can rely." *Id.* (*quoting U.S. v. Cortez*, 449 U.S. 411, 418 (1981)). Searches on students are reasonable in scope "when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342.

The Court will address the search (1) in the cafeteria, (2) in the 7th grade girls' restroom, and (3) in the principal's office and their constitutionality in that order. First, as alleged in the second amended complaint, twenty-three students were in a classroom when one informed the teacher that money was stolen from her. When the money was not returned upon Defendant Kitts' request, the students were ordered to walk to the cafeteria where all the students were subjected to a search at which point all students were asked to "turn out their pockets, remove their shoes, and show the bottoms of their feet." The students' backpacks were also searched, and the students were subjected to "full-body pat downs." Nothing more is alleged in the complaint.

These allegations, taken as true and in the light most favorable to Plaintiffs, do not sufficiently state a claim for an unreasonable search under the Fourth Amendment. The search was justified at its inception because Defendants possessed reasonable suspicion that one of the twenty-three students potentially possessed the alleged stolen money. *Safford*, 515 U.S. at 371 (at

inception, search requires only "moderate chance of finding evidence of wrongdoing"). The fact that all the students were required to be searched does not in and of itself make the search unreasonable. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (a search in the public-school context, which often requires "swift and informal disciplinary procedures" to maintain order, does not always require "individualized suspicion" to be reasonable under the Fourth Amendment). T.W. and D.W. were present in the classroom and could have possessed the money. The way the searches, including the pat-down, were conducted on T.W. and D.W. were reasonable in scope because the searches were limited to Plaintiffs outer clothing, shoes, feet, and backpacks. *See A.M. v. Holmes*, 830 F.3d 1123, 1160 (10th Cir. 2016) ("a search of a student which is justified at its inception is also justified as to outer clothing and a backpack." (internal citation omitted)).

Furthermore, Plaintiffs' conclusory statement that the students were subjected to a full-body pat down is insufficient to state a claim for a Fourth Amendment violation. Plaintiffs fail to specify which defendant allegedly patted-down which student, what the pat down consisted of and if any of the named defendants touched T.W. or D.W. *See Pahls*, 718 F.3d at 1225 (because Section 1983 is a vehicle "for imposing personal liability on government officials, [the Tenth Circuit] has stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. [I]t is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom*, . . . as distinguished from collective allegations.") (*quoting Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir.2011)) (emphasis in original; internal quotations omitted)). Plaintiffs have failed to state a claim as to the cafeteria search.

Second, T.W. and D.W. were present in the restroom, however, at no point do Plaintiffs point to facts particular to T.W. or D.W that indicate a constitutional violation. In fact, T.W. and

D.W. refused to consent to the search and the complaint does not state whether they were subjected to any search. As a result, Plaintiffs have failed to state a claim as to the search inside the restroom, as well.

Finally, Plaintiffs allege that two female students were ordered to accompany Defendant Fulton to Defendant Kitts' office and that Defendant Kitts ordered the students pull their bras to see if anything would fall out, which exposed intimate areas. The alleged facts in the second amended complaint indicate that T.W. and D.W. were **not** the students ordered to Defendant Kitts' office. Although the search could potentially be unreasonable, Plaintiffs failed to state that T.W. or D.W. were the ones subjected to this search. *Cf. Safford*, 557 U.S. at 374–75 (holding that this type of search could be unreasonable because "[t]he very fact of [the student's] pulling her underwear away from her body in the presence of the [school] officials who were able to see her necessarily exposed breasts and pelvic area to some degree, and both subjective and reasonable societal expectations of personal privacy support the treatment of such a search as categorically distinct, requiring distinct elements of justification on the part of school authorities for going beyond a search of outer clothing and belongings."). Without any allegations that T.W. and D.W. were subjected to this particular kind of search, Plaintiffs failed to state a claim as to the search in the principal's office.

## II.     Motion to Dismiss as Policy is Constitutionally Valid

Defendants filed their Motion and Memorandum in Support of Motion to Dismiss Plaintiffs' Count I as Policy No. 339 was Facially Valid, and Plaintiffs filed a response. However, Plaintiffs' response fails to cite any authority. D.N.M.LR-Civ. 7.3(a) (motions and responses must cite to authority). Because Plaintiffs failed to meet their duty to cite relevant authority, the Court need not address the arguments put forth in Plaintiffs' response brief. *See Cahill v. Am. Family*

*Mut. Ins. Co.*, 610 F.3d 1235, 1238-39 (10th Cir. 2010) (court need not address conclusory argument unsupported by relevant authority). The Court also deems the lack of arguments to be a confession to all facts raised in Defendants' motion. *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 (10th Cir. 2002).

However, the mere fact that Plaintiffs failed to comply with this Court's local rules does not warrant automatic dismissal. *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003) ("[E]ven if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."). Therefore, the Court will determine whether Plaintiffs' have stated a claim upon which relief can be granted for their challenge of the constitutional validity of the school's policy.

Plaintiffs must shoulder a heavy burden to succeed on a facial attack of the policy. *U.S. v. Salerno*, 481 U.S. 739, 745 (1987). "A facial challenge to a [policy] is [. . .] the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exits under which the [policy] would be valid." *Id.* The facial challenge to the policy requires "an examination of whether the terms of the [policy] itself, measured against the relevant constitutional doctrine, and independent of the constitutionality of particular applications, contain a constitutional infirmity that invalidates the [policy] in its entirety." *Taylor v. Roswell Ind. Schl. Dist.*, 713 F.3d 25, 39 (10th Cir. 2013) (citation and quotation marks omitted).

The Tenth Circuit held that "[a court] need not and do[es] not address [a] facial challenge" when "[it] conclude[s] the as-applied challenge fails." *United States v. Morgan*, 748 F.3d 1024, 1031 (10th Cir. 2014). For a statute to be facially unconstitutional, Plaintiffs "must establish that [the] law is unconstitutional in all of its applications." *City of Los Angeles v. Patel*, —— U.S. ——

–, 135 S.Ct. 2443, 2451, 192 L.Ed.2d 435 (2015) (quotations omitted). The Court, having already discussed the relevant case law and having found that the searches in question were constitutional as applied to Plaintiffs, finds that the policy at issue is consistent with the Fourth Amendment.

Plaintiffs have not pointed the Court to any case law that demonstrates how the language in the policy is unconstitutional on its face or as applied, and the Court will not make any arguments for Plaintiffs. Therefore, this claim will be dismissed for failure to state a claim.

### III.     Motion to Dismiss Based on Governmental Immunity

The Court declines to exercise supplemental jurisdiction over the remaining state-law claim. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [. . .] if the district court has dismissed all claims over which it has original jurisdiction[.]").

**CONCLUSION**

For the reasons set forth in the Memorandum Opinion and Order, the Court finds that Defendants are entitled to qualified immunity because Plaintiffs failed to demonstrate that they suffered a constitutional violation. As a result, the finding of qualified immunity is proper.

**IT IS THEREFORE ORDERED** that Defendants' Motion and Memorandum to Dismiss Count II of Plaintiffs' Second Amended Class Action Complaint on the Basis of Qualified Immunity, **[Doc. 70, filed September 20, 2018]**, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Official-Capacity Defendants' Motion and Memorandum in Support of Motion to Dismiss Plaintiffs' Count I as Policy No. 339 was Facially Valid, **[Doc. 72, filed September 20, 2018]**, is **GRANTED.**

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) on Plaintiffs' remaining state-law claim and

declines to address Defendants' Motion and Memorandum to Dismiss Plaintiffs' Claims Brought Pursuant to the New Mexico Tort Claims Act on the Basis of Governmental Immunity. **[Doc. 71, filed September 20, 2018]**.

**IT IS FINALLY ORDERED** that the Clerk of this Court shall take the necessary actions to **REMAND** the case to the Thirteenth Judicial District Court, County of Sandoval, New Mexico.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE